**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Phillip Lucachick,

Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**
Civil File No. 00-2404 MJD/JGL

NDS Americas, Inc.,

Defendant.

---

Brian N. Toder, Chestnut & Cambronne, P.A., on behalf of Plaintiff.

Denis E. Grande, Mackall, Crounse & Moore, P.L.C., on behalf of Defendant.

---

This matter is before the Court on Defendant's motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), or in the alternative to transfer venue to the Southern District of California. Plaintiff Lucachick filed suit in Minnesota State District Court, alleging breach of contract and fraud. Defendant NDS Americas, Inc. ("NDS") removed the suit to this Court on the basis of diversity jurisdiction. Based on a review of all the files, records, and proceedings herein, the Court finds that it lacks personal jurisdiction over Defendant, and therefore Defendant's motion to dismiss is GRANTED.

**Background**

In 1999, Plaintiff Phillip Lucachick interviewed, both by telephone and in person in California, for employment with NDS, a Delaware corporation with its principle place



FILED MAY 0 2 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD______
DEPUTY CLERK______

of business in California. NDS provides systems and services for the secure distribution of entertainment and information over digital media and the Internet to televisions and personal computers. NDS hired Lucachick in the summer of 1999, as a regional sales manager in Minnesota.

According to Plaintiff, during employment negotiations, he told NDS he would only accept an employment offer if it included stock options. NDS's subsequent written offer of employment contained the following provision, "You will also be eligible to receive 10,000 units of future NDS options upon program implementation." Ex. 1, Rudolph Decl. Lucachick also signed an At-Will Employment Agreement.

NDS terminated Lucachick in February, 2000. After his termination, he asked NDS for the stock options discussed in the employment offer. NDS told him that his stock options had not vested, according to the Executive Share Option Scheme. Lucachick then sued in Minnesota State District Court, alleging breach of contract and fraud. NDS removed the case to this court, and now moves for dismissal based on lack of personal jurisdiction.

**Argument**

When a defendant challenges jurisdiction, the burden is on the plaintiff to prove the minimum contacts necessary to satisfy due process. See Hardrives, Inc. v. City of LaCrosse, Wisconsin, 240 N.W.2d 814, 816 (Minn. 1976); Newhard, Cook & Co. v. Inspired Life Centers, Inc., 895 F.2d 1226, 1228 (8th Cir. 1990). "At the pre-trial stage, however, the plaintiff need only make a prima facie showing of sufficient Minnesota-related activities through the complaint and supporting evidence, which will be taken as

true." Hardrives, 240 N.W.2d at 816. For the purpose of this motion, this court must take Plaintiffs' allegations as true. See Dakota Industries, Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991).

Federal courts have been instructed to use a two-step inquiry when determining if jurisdiction exists over a non-resident party: "(1) whether the facts presented satisfy the forum state's long-arm statute, and (2) whether the non-resident has minimum contacts with the forum state, so that the court's exercise of jurisdiction would be fair and in accordance with due process." Soo Line R. Co. v. Hawker Siddeley Canada, Inc., 950 F.2d 526, 528 (8th Cir. 1991).

Minnesota's long-arm statute will be satisfied if a corporation "[t]ransacts any business within the state, or . . . [c]ommits any act in Minnesota causing injury or property damage in Minnesota, or... [c]ommits any act outside Minnesota causing injury or property damage in Minnesota . . . ." Minn. Stat. § 543.19. The Minnesota Legislature intended the state long-arm statute to "have the maximum extraterritorial effect allowed under the due process clause of the federal constitution." Rostad v. On-Deck, Inc., 372 N.W.2d 717, 719 (Minn. 1985), cert. denied, 474 U.S. 1006 (1985). Since Minnesota's long-arm statute has such broad extraterritorial effect, the determination as to the propriety of this court's exercise of personal jurisdiction over NDS "collapses into the single question of whether exercise of personal jurisdiction comports with due process." Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994).

The due process clause requires that there are "minimum contacts" between the

defendant and the forum state before the forum state may exercise jurisdiction over the defendant. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980). The "minimum contacts" requirement will be satisfied if the defendant's conduct and connection with the forum state is such that the defendant should reasonably anticipate being haled into the forum state's court. See id. at 291. Furthermore, the maintenance of the suit in the forum state must not offend traditional notions of fair play and substantial justice. See International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)(citations omitted).

The United States Court of Appeals for the Eighth Circuit applies a five factor test to determine if a defendant's minimum contacts reconcile with federal due process requirements. Those factors are: (1) The quantity of contacts within the forum state, (2) the nature and quality of contacts, (3) the source and connection of the cause of action with these contacts, (4) the interest of the state providing a forum, and (5) the convenience of the parties. See Mountainaire Feeds, Inc. v. Argo Impex, S.A., 677 F.2d 651, 654 (8th Cir. 1982). The courts must not mechanically apply these factors, for it has been held that the last two factors are to be considered, but are not determinative. See Soo Line, 950 F.2d at 529, quoting Aaron Ferer & Sons v. American Compressed Steel, 564 F.2d 1206, 1210 n. 5 (8th Cir. 1977).

1. Quantity of Contacts

Lucachick argues that NDS has contacts with Minnesota in the form of his employment contract, and ongoing contractual dealings with two corporations that have ties to Minnesota. Plaintiff contends first that the existence of the employment contract

between him and Defendant is enough to confer jurisdiction. Entering into this contract is by itself insufficient grounds upon which to predicate the exercise of this Court's jurisdiction. See Mountainaire Feeds, 677 F.2d at 655. Nor is the fact that some of the negotiations were conducted over the telephone, with Lucachick in Minnesota and NDS in California, enough to confer jurisdiction. See Stangel v. Rucker, 398 N.W.2d 602, 605 (Minn. Ct. App. 1986)(holding that telephone conversation did not confer personal jurisdiction over non-resident in a fraud claim, where plaintiff initiated the call).

Lucachick argues that the contract was being performed in Minnesota, and therefore any alleged breach took place in Minnesota and this confers jurisdiction. Whether Lucachick's employment is sufficient to confer jurisdiction requires an evaluation of the "real object of the business transaction." Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 317 (1943). What must be contemplated is the future course of dealing between the parties. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479(1985)(evaluating prior negotiations, contemplated future consequences, terms of the contract and the parties' actual course of dealing in determining whether minimum contacts were established).

Lucachick argues that his involvement in the sale of $200,000 worth of services to DigitalXpress, L.L.C. ("DXP") in 1999 by itself shows that he was expected to do at least some of his work in Minnesota. NDS counters this by pointing out that this sale occurred soon after Lucachick started working, and had been "in the works" for some time prior to his start date. See Rubin Decl. at ¶5; Lucachick Aff. at ¶¶7-10. Lucachick does not provide any further evidence that he conducted work in Minnesota or was expected to do so.

The Court is not convinced by Plaintiff's argument. Lucachick's residence was the only connection between the employment contract and Minnesota. He does not dispute Defendant's assertions that his residence in Minnesota was a personal choice and not a requirement of the contract. See Rudolph Decl. at ¶10. Most of the contract negotiations and final signing took place in California. The job description required Plaintiff to report to NDS's headquarters in California, and to create business contacts with companies located outside of Minnesota. As to the one time Y2K upgrade sale to DXP, the affidavits presented by Plaintiff do not establish that he played a critical role in the sale. See Wright Aff. at ¶¶4,5; Combs Aff. at ¶¶4, 5. The alleged breach therefore does not support a finding of jurisdiction.

Lucachick also claims that NDS's ongoing contractual relationships with two corporations that do business in Minnesota, the aforementioned DXP and United States Satellite Broadcasting (USSB), are enough to confer general jurisdiction. General jurisdiction arises where the defendant's contacts with the forum are "continuous and systematic" and would allow suit against the defendant even if the contacts are not related to the suit. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984).

DXP, a subsidiary of Boeing, provides satellite delivered digital services. From approximately 1995 to 2000, NDS supplied DXP with distribution systems and services. DXP maintains an office and technical uplink site in Minneapolis, both of which received services from NDS. NDS contends that the provision of these services do not constitute a purposeful contact with Minnesota because the contract negotiations and monitoring took place at Boeing's corporate headquarters in Washington.

Lucachick also testified to his personal knowledge of the ongoing relationship between NDS and a Minnesota facility owned by USSB.[1] He states that USSB constructed a broadcast center in Oakdale, Minnesota in 1993. As part of its delivery of television signals to the entire continental United States via transponders on a high powered satellite, USSB maintained redundant conditional access uplink system servers provided by NDS. These servers were purchased from NDS, and installed by NDS personnel in 1994. NDS received monthly fees for the use of its technology, including upgrades to hardware and software (over $10 million from 1994-present). Lucachick states that USSB developed its business "in cooperation with" DirecTV, a Delaware corporation with its principle place of business in California. From 1994-1999, USSB paid monthly fees for the use of NDS technology, through DirecTV, which managed the contract with NDS. DirecTV bought out USSB in 1999.

The Court finds that neither of these relationships rise to the level of "systematic and continuous" contacts with Minnesota, because while those companies may have used the NDS products in Minnesota, the original contracts were made elsewhere. The specific contacts described by Lucachick (the 1994 installation of equipment in Oakdale, the 1999 meetings) were isolated incidents. Nor were they "systematic," because DXP is a subsidiary of Boeing which merely happens to have a Minnesota facility, and DirecTV decided to install the equipment in Minnesota after purchasing it from NDS. Any contacts between NDS and USSB, which was located in Minnesota, were conducted through DirecTV, which was located in California. Any contacts

---

[1]Plaintiff was employed by USSB from 1987-1999, first as a Senior Project Engineer and later as Director of Systems Integration.

between NDS and DXP's Minnesota operation were conducted through DXP's headquarters in Seattle. The Court finds that these contacts are tenuous and not sufficiently numerous or sustained to support jurisdiction.

2. Nature and Quality of Contacts

The critical factor in this portion of the analysis is a determination of whether the contacts of NDS with Minnesota constituted "voluntary, affirmative, economic activity of substance," Zumbro, Inc. v. California Natural Products, 861 F.Supp. 773, 780 (D. Minn. 1994). As discussed *supra*, the contacts between NDS and Minnesota were neither purposeful nor meaningful. Lucachick's residence in state was voluntary. While NDS employees had sporadic contact with Minnesota-based facilities, these do not rise to the level of "affirmative economic activity of substance." Id.

3. Source and Connection of Cause of Action with Contacts

In a contract dispute, a finding of specific jurisdiction requires a substantial connection between the contract breach and the state. See Dent-Air, Inc v. Beech Mountain Air Service, Inc., 332 N.W. 2d 904, 907 (Minn. 1983). NDS points to a lack of alleged relationship between the failure to grant stock options and Minnesota. The Court has already determined, see supra, that Lucachick's employment contract was not to be performed in-state, so to the extent that Plaintiff's complaint rests on a breach of the employment contract, there is only marginal contact with Minnesota. Further, all conversations concerning stock options, the basis of the suit, were conducted either on the telephone or in California. The NDS stock option plan is administered out of London, England, where the Directors of NDS Group plc (the parent corporation of NDS) are based. The "general jurisdiction" contacts alleged by Lucachick all occurred

before the option scheme was adopted or Lucachick was hired by NDS.

4. Interest of Minnesota and Convenience of the Parties

Lucachick argues that Minnesota has an interest in protecting its citizens. While this may be true, California has an equally strong interest given the residency of the defendants. Furthermore, the resolution of this conflict requires the interpretation of the employment contract, which was negotiated and signed in California, and the NDS employment stock option plan, which affects mostly California residents. Given that forum state interest and the convenience of the parties are secondary concerns in this analysis, it is the opinion of the Court that this factor does not weigh in favor of maintaining this action in Minnesota.

Accordingly, the Court finds that Defendants are not subject to the *in personam* jurisdiction of the United States District Court, District of Minnesota. **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss is Granted.

Let judgment be entered.

Dated: May 2, 2001.

Michael J. Davis
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd